RE INCOME TAXES EDMUND J. LORD.

No. 2052.

Argued October 26, 1933.     Decided December 2, 1933.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an appeal from the decision of the board of equalization sustaining an assessment against E. J. Lord, the appellant, of an income tax upon certain moneys re-

ceived by him during the year preceding January 1, 1931.

E. J. Lord and E. E. Black, having been prior thereto associated in the contracting and building business, in September, 1926, formed a corporation under the name of E. J. Lord, Limited. The corporation had a capital stock of $100,000 in one thousand shares, six hundred shares of which were issued to E. J. Lord and four hundred shares to E. E. Black, Lord contributing in payment of the stock money or other capital of the value of $60,000 and Black contributing money or other capital of the value of $40,000. Apparently to comply with the requirements of the law relating to the formation of corporations, three other stockholders were named, each as the holder of one share, but, as testified to by Black at the trial before the board, these three held the shares only "nominally" and were in reality "dummies." In each of the annual reports subsequently filed with the treasurer of the Territory only two persons were named as holders of the capital stock and these were E. J. Lord as holding six hundred shares and E. E. Black as holding four hundred shares.

The corporation met with a large measure of success and received substantial profits from its operations.

Late in 1929 E. E. Black, whose ambition had long been to form and control a corporation of his own, and E. J. Lord, who, because of ill health and perhaps for other reasons, desired to retire from the active pursuit of that business, after various discussions came to the understanding that Lord would retire and that Black would continue the business. On December 13 of that year they signed a written document which had been prepared by learned counsel, a former chief justice of this court, stating the terms of the understanding which the two had so reached. There was included in the agreement the grant to E. J. Lord Company, Limited, of an option to

acquire the six hundred shares owned by E. J. Lord, for a consideration therein stated. Shortly thereafter the option was accepted by the corporation and in due course, in part early in 1930 and in part in December of 1930, the sum of $468,219.98 was paid to Lord in accordance with the terms of the contract.

Subsequent to the acceptance of the option the name of the corporation was changed to E. E. Black, Limited, and its capital stock was reduced to $40,000 divided into four hundred shares, all of which was held by E. E. Black. Section 1391, R. L. 1925, which is part of chapter 103, relating to income taxes, provides that "in assessing the income of any person or corporation there shall not be included the amount received from any corporation as dividends upon the stock of such corporation if the tax of two per centum has been assessed upon the net profits of such corporation as required by this chapter." It is undisputed that the money paid to E. J. Lord under the contract referred to, other than the sum of $60,000 which came from capital, was actually paid by the corporation out of undivided profits, partly earned prior to the date of the contract and partly earned after the date of the contract and that upon all of these undivided profits the corporation had paid the tax of two per cent required by law. The contention of the taxpayer-appellant is that the moneys received by him in 1930 (other than $60,000 thereof) were received by him "as a dividend" out of profits which had already borne the statutory tax of two per cent and are, therefore, exempt from taxes as income of E. J. Lord. The contention of the Territory, on the other hand, is that in the transaction between Lord and Black there was not any payment of a dividend and that there was simply a sale by Lord and a purchase by the corporation of the six hundred shares of the capital stock owned by Lord and a payment therefor of the purchase

price in which was not involved or included any idea of a dividend. A second claim by the appellant is that even if the moneys in question were not received by Lord, "as a dividend" but are to be deemed gains or profits derived from the sale of personal property, still no tax is assessable thereon because the increase in value of the six hundred shares over and above $60,000 accrued during the years 1926, 1927, 1928 and 1929 and did not accrue wholly during the taxation year of 1929.

The main question is, what was the nature of the transaction between the corporation and Lord? As to the $60,000 there is no dispute. It was a restoration to Lord of the capital which he had contributed. As to the remainder, was it received by Lord as a dividend? The board of directors of E. J. Lord, Limited, held a meeting on December 7, 1929, to consider the proposal then pending. Under the title of "Purchase of Stock" the minutes of that meeting say: "Mr. E. E. Black moved that as Mr. E. J. Lord was willing to sell all his stock of E. J. Lord, Ltd., the company was to redeem the 600 shares for which the company was to pay for the said shares in the following manner: (1) The sum of money equal to 60% of the net worth of the company as of December 31st, 1929; (2) the sum of money equal to 60% of the net profits of all contracts awarded and not completed on December 31, 1929; (3) the sum of money equal to 40% of the amount to which Mr. E. J. Lord may become liable for federal and territorial income taxes upon income accrued and to accrue to him resulting from the sale of said 600 shares. Mr. Lord agreed to give the company an option to purchase the above mentioned stock to February 28th, 1930, and to have an agreement drawn signed by both parties covering the above option, price and payments to be made, a copy of such agreement to be entered into the minute book." This motion carried unanimously. An-

other motion adopted at the same meeting was: "That the company upon the exercise of the option cause its articles of association to be amended" so as to effectuate a change of name.

Then followed the carefully drawn agreement of December 13, 1929, which was intended, as appears from the evidence, to be a written record of what the agreements were. Omitting irrelevant portions, that instrument recited and declared, referring to E. J. Lord's six hundred shares of capital stock, that the corporation "desires to redeem said shares of stock;" that Lord "is willing to accept as consideration for the sale of said stock" to the corporation and the corporation "is willing to pay" to Lord "for the redemption of said stock, a sum of money equal to sixty per cent (60%) of the net worth" of the corporation "as of December 31, 1929, and a sum of money equal to sixty per cent (60%) of the net profits yet to accrue" to the corporation "by its completion of the respective works contemplated by certain executory contracts to which" the corporation "is a party, remaining uncompleted, and the further sum of money equal to forty per cent (40%) of the amount to which" Lord "may become liable to the United States of America and/or the Territory of Hawaii for income taxes upon income accrued and/or to accrue to him by reason of and resulting from the exercise" by the corporation "of the option hereby granted and the consummation of the sale of said six hundred (600) shares of the capital stock" of the corporation; that "the net worth of the" corporation "cannot be determined until the books" of the corporation "have been closed for the year 1929 and an audit made thereof;" that certain enumerated contracts were uncompleted; that therefore Lord "does hereby * * *" (a) "give and grant" to the corporation "an option, irrevocable within the time for acceptance

herein limited, to purchase free from encumbrances the said six hundred (600) shares of the capital stock" of the corporation "so owned by him * * * for the consideration hereinafter set forth," (b) "assign and deliver" to the corporation the same six hundred shares, duly endorsed, "by way of pledge to secure the performance" of Lord's covenants and (c) appoint the corporation his attorney "upon the exercise of the option hereby granted" to cause the said six hundred shares "of the capital stock * * * to be redeemed" by the corporation and "to be recorded on the proper books" of the corporation. The corporation, on the other hand, agreed (1) to close its books as of December 31, 1929, and to have them audited, (2) to faithfully complete the uncompleted contracts in as economical manner as possible, (3) to have its books open to the inspection of Lord at all times and (4) that "upon the exercise of the option by it to it hereby granted," it will, "as soon as may be, cause its articles of association to be amended" so as to effectuate the desired change of name. Both parties mutually covenanted and agreed therein (1) that "the option hereby given shall be open for acceptance up to, but not after the 28th day of February, 1930," (2) that "the purchase price of the said stock" should be, reciting the precise language earlier in the document used, "a sum of money equal to sixty per cent (60%) of the net worth" of the corporation as of December 31, 1929, "a sum of money equal to sixty per cent (60%) of the net profits yet to accrue" to the corporation "by its completion" of the uncompleted contracts and "the further sum of money equal to forty per cent (40%) of the amount" which Lord "may become liable" to pay "for income taxes upon income accrued and to accrue to him by reason of and resulting from the exercise" by the corporation "of the option hereby granted and the consummation of the sale"

of the six hundred shares. The document further recites "that such purchase price shall be paid" to Lord as follows: "The sum of money equal to sixty per cent (60%) of the net worth" of the corporation "as of December 31, 1929, forthwith upon the exercise" by the corporation "of the option hereby granted to it. In the event that the amount so payable exceeds the sum of two hundred fifty thousand dollars ($250,000.00), the amount of the excess over that sum may be retained" by the corporation "until and paid by it to" Lord "upon the completion of the St. Louis Heights contract and the receipt by it of the full consideration for the performance thereof, the sum of money equal to sixty per cent (60%) of the net profits yet to accrue from each of the foregoing enumerated uncompleted contracts when completed and the moneys, bonds or other consideration accrued and payable or deliverable" to the corporation "thereunder, reduced to possession, and the sum of money equal to forty per cent (40%) of the income tax" which Lord might become liable to pay "for income taxes upon income accrued or to accrue to him by reason of and resulting from the exercise by" the corporation "of the option hereby granted and the consummation of the sale" of the six hundred shares "forthwith upon assessment."

Under date of February 15, 1930, Lord signed a paper whereby he acknowledged receipt of the sum of $250,000 in money or its equivalent, from the corporation, which paper read as follows: "E. J. Lord, Limited, having duly accepted the option granted by me to it by the indenture of agreement between us dated December 13, 1929, and the sum of two hundred seventy-three thousand eight hundred fifty-five dollars and thirty-six cents ($273,855.36) having been found to be sixty (60%) of the net worth of E. J. Lord, Limited, as of December 31, 1929; I hereby accept in lieu of cash and acknowledge

receipt from E. J. Lord, Limited, in payment of the sum of two hundred fifty thousand dollars ($250,000.00) on account of the purchase price of the six hundred (600) shares of the capital stock of E. J. Lord, Limited, the subject of said indenture, the following enumerated notes, bonds and cash,"—followed by an enumeration of the property transferred and received.

These are the formal documents which the parties executed as setting forth the terms of the transaction. Nowhere is there the slightest reference to a dividend declared, paid or received. Nowhere in the books of the corporation, as exhibited in evidence, is there any treatment of these payments to Lord or of any part thereof as a dividend or dividends. (The books do contain entries showing the payment of dividends during the four-year period.) The essence of the transaction, as disclosed by the minutes of the corporation, by the formal memorandum of contract, by the formal receipt and by the testimony, is that Lord sold to the corporation and that the corporation bought back (that is what the word "redeem" means) from him the six hundred shares of stock. There is nothing in the use of the word "redeem" or of the word "redemption" that indicates the making or the receiving of a dividend. It simply imports, as used in connection with these shares of capital stock, that the corporation which once issued or gave out the stock repurchased it or bought it back. Its use is entirely consistent with the statement in the same contract that Lord was *selling* the stock and does not in any wise qualify the use of the word "sale."

Counsel for the appellant urges that the ultimate result to the parties would have been the same if the corporation had on one day declared and paid a dividend of sixty per cent of its undistributed profits and then on the next week or the next day bought Lord's six

hundred shares for the sum of $60,000. That may be assumed to be a correct statement; but it does not affect the conclusion which ought to be reached in this case. It is not for us to consider now what the parties might have done. What is before us for consideration is, what did they actually do? This is necessarily, in large measure, a question of the intention of the parties. The instruments and records above recited are susceptible of only one interpretation in that respect and that is that the parties understood and intended that Lord was selling and that the corporation was buying the six hundred shares. Not only was there no reference to a dividend in the records evidencing the transaction but the statements made tend to exclude and to render impossible the thought of a dividend. The parties declared that it was a sale and a purchase; they declared that a part of the consideration should be a sum of money equal to sixty per cent of "the net worth of the corporation," which net worth must have necessarily included capital as well as the undistributed profits, and they did not, in that connection, distinguish between the two; that another part of the consideration was to be a sum of money equal to sixty per cent of the net profits to accrue in the future from contracts then uncompleted. They did not say that it should be sixty per cent of the net profits but did say that it should be a sum of money equal to sixty per cent of the net profits. Was the corporation on December 13, 1929, declaring a dividend out of profits not yet earned and which might not be earned for a year longer? Moreover, in the transaction the corporation did not pay any money or deliver any equivalent property to Black. He certainly did not receive any dividend. While it may be legally possible for one only of two shareholders to receive a dividend, the other consenting to defer his dividend to a later time, that arrangement, when claimed

to exist, should at least be shown by clear and convincing evidence; and in the case at bar there is no evidence whatever of any such arrangement. A dividend could as well have been paid to Black and the money by him later reinvested in his corporation but that is not the course that was followed.

Another consideration, not controlling and yet relevant, is that the exemption provided for in the provisions of section 1391, above quoted, is that in favor of amounts received from a corporation "as dividends *upon the stock*" of that corporation. This would seem to presuppose the payment of a dividend to one who holds stock rather than to one who by the very transaction is relinquishing the stock to the corporation. If the legal possibility of one who is relinquishing stock in the same transaction receiving a dividend upon that stock is not excluded, at least it would require some evidence on the part of the parties to the transaction to indicate that some or all of the moneys paid to the outgoing stockholder were being paid as a dividend. There are no such indications in the case at bar.

The conclusion is irresistible that irrespective of what the parties might have accomplished if they had pursued a different course, the transaction as it actually occurred was a sale and purchase and resulted in a profit to Lord in the sale of his stock.

The other contention of appellant likewise cannot be sustained. Section 1388, R. L. 1925, provides that "there shall be levied, assessed, collected and paid annually upon the gains, profits and income received by every individual residing in the Territory, from all property owned, * * * a tax in accordance with the following schedule on the amount so received during the taxation period." The schedule of rates of taxation follows. Section 1390 provides that "in estimating the gains, profits and income

of any person or corporation, there shall be included * * * the amount of sales of all movable property, less the amount expended in the purchase or production of the same * * * and all other gains, profits and income derived from any source whatsoever during said taxation period." In the face of this language of the statute, the contention that the profits resulting from the sale of stock were not taxable in January, 1931, because they did not wholly accrue during the year 1930, is untenable. The requirement of the statute was that in January, 1931, liability would accrue for taxes on income which was "received" or "derived" during the taxation period, which was the year 1930; and this is made even more clear with reference to the sales of movable property when the statute declares that in estimating the profits "there shall be included * * * the amount of sales * * * less the amount expended in the purchase." The legislature did not, in this connection, make any exception of those parts of the gain in value which did not accrue during the taxation year and the court cannot now make the exception.

Reliance is had by the appellant upon the case of *Gray* v. *Darlington,* 15 Wall. 63, 65. That case was decided upon the federal statute of 1867, which taxed certain classes of income *"for* the year" preceding the taxation date. Income or gains or profits "for" a stated year can well be held to exclude gains or profits accruing during other years. This distinction was pointed out by the same court in *Hays* v. *Gauley Mt. Coal Co.,* 247 U. S. 189, 191, 192. The latter case was decided under the Act of 1909, which taxed "the entire net income * * * received by it" (the taxpayer) *"during* such year," which is the equivalent of the expressions used in our statute for the admeasurement of taxable income. It was held in the *Hays* case that the Act of 1909 "measured the tax by the income received within the year for which the

assessment was levied, whether it accrued within that year or in some preceding year while the Act was in effect,"—with an exception not material to the case at bar. And see *Ewa Plantation* v. *Wilder*, 26 Haw. 299, in which it was held that a sum received by the taxpayer in liquidation of losses or damage sustained in consequence of a laborers' strike is to be regarded as income of the year in which it is received and may not be attributed to the years in which the damaged crops of cane were sold.

The decision of the board of equalization is affirmed.

*H. L. Wrenn* (*Prosser, Anderson, Marx & Wrenn* on the briefs) for the taxpayer.

*E. C. Peters* for E. E. Black, Ltd.

*H. T. Kay,* First Deputy Attorney General, for the assessor.

