**LORD v. TERRITORY OF HAWAII.**
No. 7543.

Circuit Court of Appeals, Ninth Circuit.
Nov. 8, 1935.

Robertson & Castle, A. L. Castle, and N. A. Newmark, all of Honolulu, T. H., and Frederick W. Dorr, of San Francisco, Cal., for appellant.

W. B. Pittman, Atty. Gen., of Territory of Hawaii, and Joseph V. Hodgson, George P. Kimball, and Jon Wiig, Deputy Attys. Gen., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

In his territorial income tax return for 1930, apppellant, Edmund J. Lord, a resident of the territory of Hawaii, reported as his total income for that year $527,-598.20, against which he claimed deductions and exemptions amounting to $535,-943.78, thus showing no taxable net income, but a deficit of $8,345.58. Among the deductions claimed by appellant was an item of $406,569.98, received by him in 1930 from E. J. Lord, Limited, a Hawaiian corporation, hereinafter called "the corporation." The territorial tax assessor disallowed this deduction and accordingly found that appellant had in 1930 a taxable net income of $398,224.40, ,upon which there was assessed a tax of $18,686.22. The assessment was sustained by the territorial board of equalization and by the territorial Supreme Court (32 Hawaii, 896), from whose judgment this appeal is prosecuted.

The Supreme Court held that the $406,-569.98 above referred to was a gain or profit received by appellant from a sale by him to the corporation of 600 shares of its capital stock, and that such gain or profit was taxable income under sections 1388, and 1390, c. 103, Revised Laws of Hawaii 1925. Section 1388 provides: "There shall be levied, assessed, collected and paid annually upon the gains, profits and income received by every individual residing in the Territory, * * * a tax in accordance with the following schedule." Section 1390, as amended by Act No. 133, Session Laws of 1927, provides:

"In estimating the gains, profits and income of any person or corporation, there shall be included all * * * profits realized within the taxation period from sales of real estate, * * * the amount of sales of all movable property, less the amount expended in the purchase or production of the same, * * * and all other gains, profits and income derived from any source whatsoever during said taxation period."

Appellant contends that the $406,569.98 was not a gain or profit from the sale of said stock, but was a dividend thereon, and that such dividend was exempt from taxation under sections 1389 and 1391 of chapter 103. Section 1389 provides: "There shall be levied, assessed, collected and paid annually * * * a tax * * * on the net profit or income * * * of all corporations doing business for profit in the Territory." Section 1391 provides that, "in assessing the income of any person or corporation there shall not be included the amount received from any corporation as dividends upon the stock of such corporation if the tax * * * has been assessed upon the net profits of such corporation as required by this chapter." The question thus raised requires for its decision an examination of the facts, which, as the record shows, without dispute, are as follows:

The corporation was formed by appellant and E. E. Black in 1926. It had a capital stock of $100,000, divided into 1,000 shares, of which appellant owned 600, for which he paid $60,000, and Black owned 400, for which he paid $40,000. Appellant and Black were the only stockholders. The corporation engaged in the contracting and building business and met with considerable success. In 1929 appellant, desiring to retire from the business, offered to sell all his stock to the corporation. This offer was considered at a special meeting of the board of directors held on December 7, 1929, the minutes of which recite:

"Mr. E. E. Black moved that as Mr. E. J. Lord was willing to sell all his stock of E. J. Lord, Ltd., the company was to redeem the 600 shares for which the company was to pay for the said shares in the following manner: (1) The sum of money equal to 60% of the net worth of the company as of December 31st, 1929; (2) the sum of money equal to 60% of the net profits of all contracts awarded and not completed on December 31, 1929; (3) the sum of money equal to 40% of the amount to which Mr. E. J. Lord may become liable for federal and Territorial income taxes upon income accrued and to accrue to him resulting from the sale of said 600 shares. Mr. Lord agreed to give the company an option to purchase the above mentioned stock to February 28th, 1930, and to have an agreement drawn signed by both parties covering the above option, price and payments to be made, a copy of such agreement to be entered into the minute book."

This motion was carried, as was another motion to the effect that, upon the exercise of the option, the name of the corporation should be changed so as not to contain the name of appellant.

Thereafter, on December 13, 1929, appellant and the corporation entered into an agreement which recited and declared that the corporation desired to "redeem" appellant's 600 shares of stock; that appellant was willing to accept, "as consideration for the sale of said stock," and the corporation was willing to pay to appellant, "for the redemption of said stock," the sums specified in the minutes above referred to; that, therefore, appellant did thereby (1) give and grant to the corporation an option to "purchase" said stock for the consideration named, (2) "assign and deliver" said stock to the corporation "by way of pledge" to secure the performance of the agreement, and (3) appoint the corporation his attorney, upon the exercise of the option, to cause said stock to be "redeemed"; and that, if the option was exercised, the "purchase price" of said stock should be paid at the times and in the manner set forth in the agreement. Nowhere in the agreement nor in the minutes or other corporate records relating to this transaction was there any reference to a dividend paid or to be paid.

The corporation exercised the option and, in accordance with its terms, paid to appellant in 1930, in cash or its equivalent, $468,219.98, all of which was paid from undivided profits of the corporation, upon which a tax had been assessed and paid, as required by section 1389, supra. Thereupon the 600 shares of stock previously held by appellant were retired, the capital stock of the corporation was correspondingly reduced, and its name was changed from E. J. Lord, Limited, to E. E. Black, Limited. The $468,219.98 received by ap-

pellant was subject to a deduction of $1,-650 on account of legal expenses, leaving as the net amount received for his stock $466,569.98. This, less the $60,000 which the stock had cost him, constitutes the item of $406,569.98 with which we are here concerned. Whether this was "gain" or "profit," within the meaning of sections 1388 and 1390, or "dividends," within the meaning of section 1391, supra, is the first and principal question to be decided. In deciding this question against appellant, the Supreme Court said:

"The essence of the transaction, as disclosed by the minutes of the corporation, by the formal memorandum of contract, by the formal receipt and by the testimony, is that Lord sold to the corporation and that the corporation bought back (that is what the word 'redeem' means) from him the six hundred shares of stock. There is nothing in the use of the word 'redeem' or of the word 'redemption' that indicates the making or the receiving of a dividend. It simply imports, as used in connection with these shares of capital stock, that the corporation which once issued or gave out the stock repurchased it or bought it back. Its use is entirely consistent with the statement in the same contract that Lord was selling the stock and does not in any wise qualify the use of the word 'sale.'

"Counsel for the appellant urges that the ultimate result to the parties would have been the same if the corporation had on one day declared and paid a dividend of sixty per cent of its undistributed profits and then on the next week or the next day bought Lord's six hundred shares for the sum of $60,000. That may be assumed to be a correct statement; but it does not affect the conclusion which ought to be reached in this case. It is not for us to consider now what the parties might have done. What is before us for consideration is, what did they actually do? This is necessarily, in large measure, a question of the intention of the parties. The instruments and records above recited are susceptible of only one interpretation in that respect and that is that the parties understood and intended that Lord was selling and that the corporation was buying the six hundred shares. Not only was there no reference to a dividend in the records evidencing the transaction but the statements made tend to exclude and to render impossible the thought of a divi-

dend. The parties declared that it was a sale and a purchase; they declared that a part of the consideration should be a sum of money equal to sixty per cent of 'the net worth of the corporation,' which net worth must have necessarily included capital as well as the undistributed profits, and they did not, in that connection, distinguish between the two; that another part of the consideration was to be a sum of money equal to sixty per cent of the net profits to accrue in the future from contracts then uncompleted. They did not say that it should be sixty per cent of the net profits but did say that it should be a sum of money equal to sixty per cent of the net profits. Was the corporation on December 13, 1929, declaring a dividend out of profits not yet earned and which might not be earned for a year longer? Moreover, in the transaction the corporation did not pay any money or deliver any equivalent property to Black. He certainly did not receive any dividend. While it may be legally possible for one only of two shareholders to receive a dividend, the other consenting to defer his dividend to a later time, that arrangement, when claimed to exist, should at least be shown by clear and convincing evidence; and in the case at bar there is no evidence whatever of any such arrangement. A dividend could as well have been paid to Black and the money by him later reinvested in his corporation but that is not the the course that was followed.

"Another consideration, not controlling and yet relevant, is that the exemption provided for in the provisions of section 1391, above quoted, is that in favor of amounts received from a corporation 'as dividends upon the stock' of that corporation. This would seem to presuppose the payment of a dividend to one who holds stock rather than to one who by the very transaction is relinquishing the stock to the corporation. If the legal possibility of one who is relinquishing stock in the same transaction receiving a dividend upon that stock is not excluded, at least it would require some evidence on the part of the parties to the transaction to indicate that some or all of the moneys paid to the outgoing stockholder were being paid as a dividend. There are no such indications in the case at bar.

"The conclusion is irresistible that irrespective of what the parties might have accomplished if they had pursued a different course, the transaction as it actually

occurred was a sale and purchase and resulted in a profit to Lord in the sale of his stock."

We agree with, and adopt as our own, the views thus stated by the Supreme Court and hold, as it held, that the $406,-569.98 which appellant received from the corporation was not a dividend, but was gain or profit from the sale of stock and, therefore, taxable income.

A further contention of appellant is that, even if the $406,569.98 here in question was gain or profit from the sale of stock, still no tax was assessable thereon for 1930, because, he says, the increase in the value of his stock occurred, and the resulting gain or profit accrued to him, not in 1930, but in 1926, 1927, 1928, and 1929. In rejecting this contention, the Supreme Court, after quoting sections 1388 and 1390, supra, stated:

"In the face of this language of the statute, the contention that the profits resulting from the sale of stock were not taxable in January, 1931, because they did not wholly accrue during the year 1930, is untenable. The requirement of the statute was that in January, 1931, liability would accrue for taxes on income which was 'received' or 'derived' during the taxation period, which was the year 1930; and this is made even more clear with reference to the sales of movable property when the statute declares that in estimating the profits 'there shall be included * * * the amount of sales * * * less the amount expended in the purchase.' The legislature did not, in this connection, make any exception of those parts of the gain in value which did not accrue during the taxation year and the court cannot now make the exception."

This construction of the territorial statute by the Supreme Court of the territory should be accepted by us, unless manifestly erroneous. Yoshizawa v. Hewitt (C. C. A.) 52 F.(2d) 411, 413, 79 A. L. R. 317; Territory of Hawaii v. Gay (C. C. A.) 52 F.(2d) 356, 359; Hill v. Carter (C. C. A.) 47 F.(2d) 869, 870; Honolulu Rapid Transit Co. v. Wilder (C. C. A.) 36 F.(2d) 159, 160; Ewa Plantation Co. v. Wilder (C. C. A.) 289 F. 664, 670. We think it not erroneous, but clearly correct. That this construction is inconsistent with that which the same court placed on this statute in an earlier case (Castle v. Tax Assessor, 18 Hawaii, 129) proves nothing, except that the earlier decision was wrong and is now overruled. Our present ruling

is not inconsistent with Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, cited by appellant. That case arose under a federal statute (Act of March 2, 1867, c. 169, § 13, 14 Stat. 477), which taxed gains, profits, and income "for" the taxation period. The territorial statute here under consideration taxes gains, profits, and income "received during" the taxation period. The distinction is obvious. See Hays v. Gauley Mountain Coal Co., 247 U. S. 189, 191, 38 S. Ct. 470, 62 L. Ed. 1061.

In this court, for the first time, appellant asserts that a part of the $406,569.98 which he received from the corporation, namely $20,328.50, was not received by him until 1931 and, therefore, should not be taxed as having been received in 1930. Appellant made no such contention before the tax assessor, the board of equalization, or the Supreme Court. On the contrary, in his tax return he reported the entire $406,-569.98 as having been received by him in 1930, and so treated it in the proceedings before the board of equalization and the Supreme Court. He cannot now be heard to contend otherwise.

Judgment affirmed.