## WARD et al. v. BOOTH et al.

### No. 12967.

United States Court of Appeals
Ninth Circuit.

June 9, 1952.

964

Bouslog & Symonds, Harriet Bouslog, Honolulu, Hawaii, for appellants.

J. Garner Anthony, Frank D. Padgett, Honolulu, Hawaii (Robertson, Castle & Anthony, Honolulu, Hawaii, of counsel), for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

A judge of the Circuit Court of the First Judicial Circuit of the Territory of Hawaii, sitting in chambers in probate upon the hearing of a petition for the appointment of a guardian of the estate of Hattie Kulamanu Ward, alleged to be incompetent, made an order in accordance with the prayer of the petition appointing Hawaiian Trust Company, Limited, guardian of the estate of the named incompetent.[1]

After the appointed guardian had qualified, Lucy K. Ward, one of the appellants here, a sister of the alleged incompetent, who had appeared and been represented by counsel in the original guardianship proceedings, describing herself as "next of friend of Hattie Kulamanu Ward", moved the court for an order appointing her as "next of friend" of the claimed incompetent, for the purpose of moving for the vacation of the appointment or the removal of the Trust Company as guardian. The

[1.] § 9648, Rev.Laws of Hawaii 1945, provides that "The judges of the several circuit courts shall have power at chambers within their respective jurisdictions, * * *. 3. To grant probate of wills, to appoint administrators and guardians, and to compel executors, administrators and guardians to perform their respective trusts and to account in all respects for the discharge of their official duties; to remove any executor, administrator or guardian; to determine the heirs at law of deceased persons and to decree the distribution of intestate estates".

motion was presented to another judge of the same court, ex parte, and an order appointing Lucy K. Ward as such "next of friend" was made. Thereupon Lucy K. Ward, describing herself as sister, attorney-in-fact, and next friend of Hattie Kulamanu Ward, moved to vacate the order appointing the Trust Company as guardian, to remove the guardian, and to hold further hearings respecting the issues raised by the petition for the appointment of a guardian.

The judge who made the order appointing Lucy K. Ward as next friend, granted a temporary restraining order, without notice, restraining the Trust Company, as such guardian, from voting the stock belonging to said estate in Victoria Ward, Ltd., at the annual meeting of its stockholders. The restraining order was accompanied by an order to show cause directed to the Trust Company and to the other two sisters of the alleged incompetent who had filed the original petition for the appointment of a guardian, requiring them to appear and show cause why the order appointing the guardian should not be vacated or the guardian removed.

Upon return to the order to show cause the matter came on for hearing before the judge who made the original appointment, who thereupon vacated both the order appointing Lucy K. Ward as next friend of the alleged incompetent, and the restraining order; denied the motion for removal of the guardian, and assessed counsel fees against Lucy K. Ward.

Lucy K. Ward and Kathleen V. Ward, another sister, sued out a writ of error to the Supreme Court of Hawaii to review both the order appointing the guardian and the order denying vacation or removal. Lucy K. Ward, describing herself as "next of friend" appealed from the last named order, and both review proceedings were consolidated in the Supreme Court. From the judgment and decree of that court affirming the orders of the circuit judge sitting in probate, the appellants have brought this appeal asserting (1) that it presents a case involving the Constitution of the United States, and (2) that the case below is a civil case where the value in controversy exceeds $5000 exclusive of interest and costs.[2]

The principal claim that the case involves the Constitution of the United States is based upon the appellant's assertion, first made in the Supreme Court of the Territory, that under the requirements of the Fifth and Seventh Amendments, the appellants and the alleged incompetent were entitled to a jury trial upon the issues presented by the original petition for the appointment of a guardian.

■ The provision for the appointment of a guardian of the estate of an insane person (including "every idiot, non-compos, lunatic and distracted person" Rev. Laws Hawaii 1945, § 12508) is made by § 12509, Revised Laws of Hawaii 1945. In its decision the Supreme Court of Hawaii held that this section "clearly permits a probate judge in guardianship proceedings 'after a full hearing' to adjudge an alleged incompetent to be insane and to appoint 'a guardian of his person or estate or both' without the intervention of a jury." [3]

---

**2.** Title 28, § 1293: "The courts of appeals for the First and Ninth Circuits shall have jurisdiction of appeals from all final decisions of the supreme courts of Puerto Rico and Hawaii, respectively in all cases involving the Constitution, laws or treaties of the United States or any authority exercised thereunder, in all habeas corpus proceedings, and in all other civil cases where the value in controversy exceeds $5,000, exclusive of interest and costs."

**3.** It would appear to us that the Supreme Court of Hawaii might have taken the position that under the Hawaiian statute, § 9648, the appellants were in no position to argue the question raised under the

Seventh Amendment. Subdivision 6 of § 9648, referred to in footnote 1, supra, authorizes the circuit judges at chambers "To select and impanel, subject to challenge for cause, by either party, a special jury of inquiry of idiocy, lunacy, or de ventre inspiciendo, or in any other matter to be tried before any of the judges at chambers, and they shall receive and act upon the verdict of such jury as equity and good conscience require * * *." § 9650 provides: "Matters in the jurisdiction of judges of the circuit courts in chambers, as set forth in section 9648, shall be determined by the judge having jurisdiction thereof, without the interven-

It is argued that a jury trial was required here because of the requirement of the Seventh Amendment that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved * * *." We agree with the conclusion arrived at by the Supreme Court of the Territory, and ably expounded in its opinion, that the proceedings here in question bear no resemblance to the "Suits at common law" referred to in the Seventh Amendment.

It has been pointed out that prior to the adoption of the Constitution and under the ancient English practice, the Lord Chancellor, as the delegate of the King to conduct insanity proceedings, was wont to issue a writ *de lunatico inquirendo* under which a jury was summoned to determine the question of sanity. Sporza v. German Savings Bank, 192 N.Y. 8, 84 N.E. 406, 408; 1 Blackstone, pp. 303, 305. Our attention is called to a number of decisions by state courts holding that under the provisions of some state constitutions the question of a person's insanity must be tried to a jury. Thus the constitution of New York, Art. 1, § 2, provides: "The

trial by jury in all cases in which it has been heretofore used shall remain inviolate forever", Sporza v. German Savings Bank, supra, and the New Jersey constitution, art. 1, par. 9, N.J.S.A. provides that the right of trial by jury should remain inviolate, In re McLaughlin, 87 N.J.Eq. 138, 102 A. 439. Most of the cases having to do with the construction of similar provisions of state constitutions are collected in a note at 91 A.L.R. 88 upon the subject "Constitutional right to jury trial in proceedings for adjudication of incompetency or insanity". As there disclosed the state courts have arrived at divergent views with respect to the meaning of their own constitutional provisions.[4] Those upon which appellants have relied have merely construed constitutional provisions similar to those in New York and New Jersey as comprehending that the ancient practice whereby the Lord Chancellor required trial by jury in proceedings to determine a person's insanity, or some subsequent statutory provision of a similar nature which was in effect in the particular state when the constitution in question was adopted must be continued and followed.

tion of a jury, except as provided in the sixth division of said section. * * *" The court therefore might well have held that a trial of the issue of incompetency by a jury was available to the incompetent and to the appellants under this subdivision 6.

Assuming the correctness of appellants' construction of the Seventh Amendment as applying to this proceeding, it is apparent that the constitutional right may be waived. Duignan v. United States, 274 U.S. 195, 198, 47 S.Ct. 566, 71 L.Ed. 996, and that where the appellants here, as well as the court-appointed guardian ad litem appeared and participated in the original hearing upon the petition for the appointment of a guardian without demanding a jury, the right vouchsafed by subdivision 6 was waived. Such a waiver was found in Sporza v. German Savings Bank, 192 N.Y. 8, 84 N.E. 406; In re Moynihan, 332 Mo. 1022, 62 S.W.2d 410, 91 A.L.R. 74; Ferguson v. Ferguson, Tex.Civ.App., 128 S.W. 632; and in Johnson v. Nelms, 171 Tenn. 54, 100 S.W.2d 648; Cf. Ah Hing v. Ah On, 15 Haw. 59; First Trust Company of Hilo v. Cabrinha, 24 Haw. 777, 781.

4. Among the courts which disagree with those whose decisions are cited by appellants are those of California. Although the California Constitution, art. 1, § 7, resembles that of New Jersey in providing that "The right of trial by jury shall be secured to all, and remain inviolate * * *", yet this has been held not to apply to proceedings for commitment of incompetents; that the right to trial by jury referred to in this provision "is the common-law right of trial by jury in ordinary civil and criminal cases", In re Liggett, 187 Cal. 428, 202 P. 660, 661. It does not apply to such special proceedings as commitments from mental illness. Matter of O'Connor, 29 Cal.App. 225, 234, 155 P. 115, 119. Knight v. Superior Court, 95 Cal.App.2d 838, 214 P.2d 21, cited by appellants, is not to the contrary. The right to trial by jury there upheld, was provided by statute. The court's reference to "the constitutional right of every citizen to a trial by jury in a proper case", was one made arguendo, in a discussion of the writ of prohibition, and in a context where the court illustrated its point by reference to criminal cases.

But there is a substantial difference between such state constitutional provisions and the Seventh Amendment, for the latter has application only to "Suits at common law". We are unable to perceive any such resemblance as would require the classification of the special proceedings here involved as "Suits at common law". The Seventh Amendment more nearly resembles the provision of the Wisconsin State Constitution which was considered in Gaston v. Babcock, 6 Wis. 503, and which states that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law." The court there held that a proceeding for the appointment of a guardian for an insane person was not a case at law, and hence a jury trial was not required by the Wisconsin provision. It is to be noted also that the Seventh Amendment refers to "Suits at common law, where the value in controversy shall exceed twenty dollars", etc. In a proceeding such as the one here involved, it cannot strictly be said that there is any value in controversy. The matter in controversy is the question of the competence or incompetence of the person named, and while the result of such a determination may affect extensive property holdings, it cannot be said that the issue to be tried is one where there is any "value in controversy".

We think that the language of the Seventh Amendment is thus not aptly descriptive of the proceedings here. The only statement of any federal court which appellants have undertaken to cite in support of their position is that of the District Court for the Eastern Division of Kentucky, in Hager v. Pacific Mutual Life Insurance Co., 43 F.Supp. 22, 26. There, however, the brief statement of the judge that "I do not believe that under our Federal and State Constitutions a person can be declared incompetent and have his property taken out of his hand or be placed in confinement without the intervention of a jury * * *." is predicated in part upon the court's view of the state constitution. The language does not indicate whether, in referring to the federal Constitution, he had in mind the Fifth or Seventh Amendment, or some other provision. We cannot regard that case as persuasive authority here.

■ As for the contention that failure to provide trial by jury violates the Fifth Amendment, this is wholly without merit. Montana Co. v. St. Louis Mining & Milling Co., 152 U.S. 160, 171, 14 S.Ct. 506, 38 L.Ed. 398.[5]

■ The next contention made is that the Supreme Court of the Territory has construed and applied § 12509, Revised Laws of Hawaii 1945, in such a manner as to deny the appellants due process of law. The section in question is the one prescribing the procedure to be followed in the appointment of a guardian. Appellants list a number of reasons why it is asserted they have been denied this due process of law. We are frank to say that we have had great difficulty in perceiving the basis for their contention. It is said that due process was denied because the court's order did not contain a finding that proper notice had been given to the alleged insane person. Section 12509 requires notice "to be given to the supposed insane person of the time and place appointed for hearing the case, not less than fourteen days before the time so appointed". The record shows that such notice was in fact given. Appellants argue that because the order appointing the guardian did not contain a formal finding that such notice had been given, the order was void and the appellants were denied due process. This argument is not supported by reference to any Hawaiian statute or decision requiring the insertion of such a finding in an order of this kind, and the argument that due process was here denied borders on the frivolous.

■ It is asserted that it was improper to appoint a guardian ad litem to appear for the alleged incompetent without prior notice to the latter, with an opportunity for hearing thereon. Appellants say that

5. That due process of law in insanity proceedings does not require trial by jury was held in Simon v. Craft, 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165, in which the due process clause of the Fourteenth Amendment was involved.

when the guardian ad litem was appointed incompetency had not been proven and Hattie Kulamanu Ward would then be presumed sane. We can find no want of due process here. The appointment of a guardian ad litem as was done here was precisely in accord with the provisions of § 12509. If it developed that the supposed incompetent was in fact sane, she would in no manner be harmed by the assistance of such a guardian ad litem; and if she was in fact insane, the guardian ad litem would be in a position to perform a useful office.

■ It is contended that appellants have been denied due process because the court did not construe § 12509: (a) to prohibit the appointment of a guardian when two sisters of the alleged incompetent objected; (b) to require the judge to permit inquiry into the motives of the sisters who filed the original petition for appointment of a guardian; (c) to require the judge to give preference to the claim of appellants, as such sisters, to be appointed guardians, or to recognize their standing to object to the selection of a particular guardian. No requirement of due process makes mandatory any such provisions. The contention is patently without merit.

In thus couching their arguments and specifications of error upon appeal to this court in language referring to due process and claiming that § 12509 "as construed and applied" by the Supreme Court of Hawaii denies such due process, appellants conceal what the court below really decided and fail fairly to state what we apprehend is the real ground of their complaint.

The assignments of error before the Supreme Court of Hawaii made no claim that § 12509, as construed or otherwise, was unconstitutional or operated to deprive them of due process. Rather, the first six such assignments of error made the points that the court should not have appointed the Trust Company as guardian because the application was opposed by two sisters with equal interests and rights; because the appointment of the Trust Com-

pany might upset the existing control of a family corporation; and because counsel for intervening objectors were not permitted to inquire into the motives of the petitioners in seeking to have a guardian appointed. Error is assigned to the effect that the court should not have held that these appellants were not suitable persons to be appointed guardians.

■ § 9564, Rev.Laws of Hawaii prohibits reversal for "any finding depending on the credibility of witnesses or the weight of the evidence or for any alleged error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an exception noted at the time it was committed." The Court correctly pointed out that the points thus listed in these assignments were not presented for the consideration of the trial judge or called to his attention or made the subject of objection and exception at the time they were purportedly committed. The Court proceeded to hold that these questions could not be made the ground of reversal by it unless it was of the opinion that some of the alleged errors or abuses patently appeared on the record as manifest error injuriously affecting the substantial rights of the appellants. It found on reviewing the record of the original guardianship proceedings that such proceedings had been in conformity with the provisions of the statute; that they conformed to due process of law under the Fifth Amendment; and that the appellants were in no manner prejudiced by what there transpired. We think that the Supreme Court of Hawaii arrived at its conclusions upon these matters in a manner which accords with accepted practices of all appellate courts.[6] In this there was no manifest error, and we are therefore precluded from reversing that Court upon the grounds thus urged. Waialua Agricultural Co. v. Christian, 305 U.S. 91, 59 S.Ct. 21, 83 L.Ed. 60.

■ Another contention, also couched in language referring to due process, is that the judgment should be reversed be-

6. The court was following its own decision in Feary v. Santos, 38 Haw. 240.

cause the trial judge failed to find Hattie Kulamanu Ward insane. This contention is new, as it was not made in the Supreme Court of Hawaii.

The record shows that at the hearing upon the petition for the appointment of a guardian, the court had before it the testimony of one of the sisters who filed the petition and that of the grandson of the other sister. Also in evidence was a report made by a qualified psychiatrist and alienist made after an examination of the alleged incompetent which extended over a period of two weeks. Both of the present appellants were represented at that hearing by counsel who cross-examined the witnesses and who indicated their satisfaction that there was sufficient prima facie showing as to the mental state of the alleged incompetent. The psychiatrist's report, which was received without objection, concluded that it was his opinion "that this patient is suffering from organic mental deterioration—on a senile and arteriosclerotic basis—to a very marked degree, with defects in orientation, memory, and judgment, which would render her incompetent and unable to properly manage business affairs." The judge then announced that he was prepared to rule that the evidence was sufficient to show the necessity for a guardian of the property, and the order appointing such guardian was made and filed. Both the substance and the form of the judge's order appointing the guardian were in conformity with Hawaiian law. The showing of insanity was adequate. Guardianship of Pratt, 34 Haw. 935, 937. The judge sitting in probate was not required to make formal findings or to issue any written decision. Estate of Mansbridge, 29 Haw. 73.

▮▮▮ With respect to the claim of appellants that their motion to vacate the order appointing the guardian or, in the alternative to remove the guardian, should not have been denied without a hearing, the Supreme Court of Hawaii held that insofar as the motion was one to vacate the appointment, its disposition was "within the sound judicial discretion of the probate judge." Insofar as the motion was one to remove the guardian, the court held that the only grounds for removal under the statute were disqualifications and disabilities of the guardian arising after its appointment. We find no manifest error here which would permit us to upset what appears to be a reasonable construction placed by the Supreme Court of Hawaii upon the controlling statute. Waialua Agricultural Co. v. Christian, supra; Lord v. Territory of Hawaii, 9 Cir., 79 F.2d 761, 764.

▮▮▮ Finally, it is asserted that the circuit judge at chambers manifested such strong bias and prejudice against these appellants that they were denied due process of law. This contention is based upon certain remarks made by the judge during the hearing of the motion to vacate the appointment of the guardian or to remove it. At that time the judge commented upon the fact that when the guardian was appointed, counsel for the appellant Lucy K. Ward had conceded the sufficiency of the evidence of incompetency of Hattie Kulamanu Ward, and referred to the fact that notwithstanding such concession it appeared that Lucy K. Ward had for a considerable period of time been managing the affairs of the alleged incompetent under a power of attorney, and that Lucy K. Ward was subject to criticism for thus acting without disclosing the incompetence of her sister. There had also been a disclosure that Lucy K. Ward had invested some of the alleged incompetent's money with some of her own money in a ranch at Molokai, taking the property in a joint tenancy with rights of survivorship. The judge also criticized that transaction and suggested that the guardian should look into it.

It seems to us that the remarks of the judge were altogether called for by the circumstances which had thus appeared and that what he said was fully justified. His remarks in no manner tended to disclose any bias or prejudice or want of fairness on his part.

As we find no error in the record the judgment of the Supreme Court of Hawaii is affirmed.