# Elizabeth E. Casebier, et al. v. B. A. Casebier, Committee, etc.

(Decided December 16, 1921.)

## Appeal from Muhlenberg Circuit Court.

Insane Persons—Contracts.—The contract of an imbecile is not void but merely voidable at the option of his committee if it be to the disadvantage of the imbecile, but if he enter into a contract which is advantageous to him and of lasting benefit to his estate, a court of equity will not set the contract aside, even at the suit of his committee.

BELCHER & BELCHER for appellants.

T. O. JONES for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This action was commenced in the Muhlenberg circuit court by B. A. Casebier, committee for his aged and infirm father, James W. Casebier, to obtain a sale of certain lands belonging to James W. Casebier, the cancellation of a certain deed made by the senior Casebier and wife to C. W. Smith, and for a full and final settlement of the estate of the plaintiff's said ward. The judgment of the court granted practically all the relief sought by the plaintiff and from this judgment Elizabeth E. Casebier and Charles W. Smith appeal.

About the year 1899 the first wife of James W. Casebier died, survived by her husband and five adult children. The next year Casebier married appellant, Elizabeth E. Casebier, which was her second matrimonial venture. At that time he was about sixty-five years of age and she about fifty. She went with him to live in his old homestead on a farm in Muhlenberg county. At that time he was reasonably prosperous and owned a farm of 150 acres of land on which there were coal and timber, quite a lot of livestock, farming implements, household and kitchen furniture and provisions. His children were opposed to the wedding and they visited him only at great intervals after his marriage. About the time of the wedding Casebier suffered a severe injury to his person through an accident, which injury grew worse as the years passed until he became unable to use his feet or legs. Before his physical condition became so bad the father and mother of Mrs. Casebier came to live with

the Casebiers and brought with them their grown daughter. This family, named England, owned a farm of sixty acres which they conveyed to the Casebiers on condition that the latter should take care of, support, nourish and clothe the two old people so long as they lived and the daughter so long as she remained single. England was drawing a pension from the Federal government of $30.00 per month and this was devoted to the benefit of the entire family. England soon died, leaving the widow and daughter with the Casebiers. The daughter married and moved to the west, but Mrs. England continued to live with the Casebiers. As the Casebiers were old and the husband was so physically infirm as to be unable to wait upon himself or to aid in the support of the family, appellant Smith, who was a relative of Mrs. Casebier, offered to and was allowed to take Mrs. England to his home and support and care for her, for which services the Casebiers conveyed to Smith in 1914 the sixty-acre farm which the Englands had conveyed to the Casebiers as aforesaid. Smith soon sold the farm for $300.00. The Casebiers were then left alone with but little means, and in the winter of 1917-18 the weather was very severe and these two old people were unable to supply themselves with fuel and food and as a consequence they endured many hardships. They had sold the timber and mineral from their land and most all of their personal property was gone and the proceeds exhausted. Occasionally during that winter some of their children came in and gave them assistance, but it is in evidence that they demanded pay for every service. Smith visited them upon one occasion and prepared firewood for them. Dreading a recurrence of the hardships they had endured the previous winter the Casebiers in September, 1918, requested their children to make arrangements to take care of them the coming winter, and the children had a meeting in the old homestead where matters were talked over and a tentative arrangement was entered into whereby Mrs. Kimmel, a daughter of Casebier, was to receive the old folks into her home and take care of them, for which she was to have compensation. Before she could receive the old folks it was necessary to build another room to her house or to make comfortable a room already there, so the matter of moving the Casebiers was deferred. Soon after this meeting Mrs. Casebier sent a letter to appellee Smith requesting him to come to

her house and dig the potatoes. On his arrival negotiations were entered into between Smith and the old people whereby Smith agreed to take the Casebiers to his home, support, nourish and take care of them the balance of their lives in consideration of reasonable compensation for such services to be paid to him after the death of the Casebiers out of their estate, which consisted of the land, a cow, mule, household goods and provisions on hands. As soon as this arrangement was entered into Smith transported the old folks from their home to his home about ten miles away. With them he carried their personal belongings, household goods, the cow and about one hundred chickens. The Casebiers were apparently content at the home of Smith, but the sons and daughter of Casebier were not satisfied with the arrangement. On June 16, 1919, they caused an inquest to be held in the Muhlenberg county court to determine the mental condition of Casebier. At that time the father was about 85 years of age and very feeble physically, the old lady being about 70 years of age. Casebier was not at the inquest, which found he was imbecile and needed a committee. A son, B. A. Casebier, was duly appointed by the court as committee for his father, whereupon he immediately entered into an arrangement with his sister, Mrs. Kimmel, to take charge of the old folks and care for the old man, for a consideration of $400.00 per year, it being supposed the old lady was able to earn her support. He either went or sent to Smith's to carry the old folks to the Kimmel home, but Mrs. Casebier refused to go. The old man was taken, as were his trunk and some of his personal belongings. The other personal property was left at Smith's because Mrs. Casebier requested it. Since that time it appears that the old gentleman has been faring well at his daughter's home and Mrs. Casebier equally well at Smith's.

A committee of an imbecile person may, by complying with section 2150, Kentucky Statutes, have a sale of his ward's real property for the payment of his debts or for the maintenance of such person and his family if there is not enough personal estate or income to support him and it is indispensably necessary to sell such real property for one or more of the purposes named. Where it is not shown that the sale of such real property is indispensably necessary for one or more of the purposes named in the statute such sale will not be ordered by a

court of equity. The facts disclosed by the evidence do not appear to warrant a sale of the real estate of Casebier. While the evidence clearly manifests the physical inability of Mr. Casebier to provide for and support himself or family, the evidence is not at all convincing that the mental condition of the old gentleman was such as to incapacitate him to enter into such arrangement as he attempted with appellant Smith. The contract with Smith, if one there was, cannot be said to be void but only voidable. The contract of an imbecile has never been held by this court to be absolutely void but only voidable. Breckinridge v. Warsby, 1 J. J. Marshall 240; Johnson v. Mitchell, 146 Ky. 382; Wathem v. Skaggs, 161 Ky. 600; L. & E. R. R. Co. v. Napier, 160 Ky. 570.

The committee for an insane person may avoid the contract of his ward if the contract be one to the disadvantage of the ward, but if the contract be one which a court of equity regards as advantageous and of lasting benefit to the ward no rescission or avoidance of the contract will be decreed if it is otherwise enforcible.

If the Casebiers entered into an arrangement with Smith whereby Smith was to take them to his home, support, nourish, feed, clothe and take care of them for the remainder of their lives for a reasonable compensation to be found by a court and paid out of their estate after their death, it was a more advantageous contract than the one the committee has made for them. This would not be true if it were not for the fact that the entertainment and care furnished by Smith to the old people for the several months they remained with him were satisfactory to them and, as far as we can learn from the evidence, was all that could have been reasonably expected by any thoughtful person. While Smith may be a poor man and may find himself unable to carry out the contract, he cannot collect for services performed until after the services are rendered and then only a reasonable sum to be paid out of the estate. As it is admitted that the entire estate of the Casebiers does not exceed $2,000.00 in value a brief mathematical calculation will disclose that at the cost of $400.00 per year for the entertainment of one of them, their entire estate will be exhausted very soon. It is said, however, in brief of counsel for appellees, that the old folks will be taken care of after their estate is exhausted without pay. This statement does not carry conviction in the face of the evidence showing that

for every service performed by the children for the parents compensation was demanded, and that no one of them would take the old folks into his home and care for them or go to their home and provide for them without promise of fair compensation. Of course, appellant Smith was expecting compensation and he had a right to, but he, according to his version of the contract, was not entitled to and could not collect from the old folks any part of his promised remuneration until he had first performed his contract by taking care of the old people throughout their entire lives, and then only could he receive such compensation as a court after hearing the facts might determine was reasonable, which sum was to be paid out of the estate of the old folks. This was a most equitable and reasonable contract so far as the Casebiers were concerned but rather burdensome, as it appears to the court, for appellant Smith, for the old folks or one of them may live several years, in which event his undertaking would not be a profitable one to him in a financial way. While appellant Smith was not a competent witness as against Casebier, who was adjudged an imbecile, the appellant, Elizabeth E. Casebier, is a competent witness. Her testimony is so fair and free from bias that it carries conviction. The best interest of the old people is the sole consideration—the only thing that concerns this court in this litigation. They are entitled to care and attention to the end of their days, and as Smith undertook to furnish this and to take pay from their estate, thus preventing them becoming a charge upon their family and their community, it was a most advantageous arrangement for them. The committee should have continued it. Moreover, the two old people should not have been separated.

After a careful examination of the evidence and a study of the briefs of counsel, we have reached the conclusion that the trial court erred in entering a judgment against Smith for $375.00 for a one-half undivided interest in the farm which the Casebiers conveyed to him in consideration of his taking care of Mrs. England. That contract was also advantageous to the Casebiers. Mr. Casebier was utterly unable to provide for Mrs. England according to his contract. Under such circumstances Mrs. England is the only person in position to complain of the transfer of the land to Smith and her home from that of the Casebiers to Smith, and she is not a party to

this action. Nor should the court have entered a judgment against Smith for the value of the personal property which was left at his home on the request of Mrs. Casebier. Part of this, no doubt, was her property, because when she married Casebier it appears that she had household belongings of her own. No doubt, she had worked and raised the chickens with which they charge Smith. If she did she had an interest in them. At any rate she was entitled to reasonable support out of the estate of her husband so long as he lives and to dower in his lands after his death. No judgment should have been entered directing a sale of the Casebier farm because Smith, by his arrangement with Casebier, was not entitled to pay for his services or the possession of the farm nor its rents, but only to reasonable compensation for the services performed by him, to be paid out of the estate of the Casebiers after their death. The committee should take charge of the farm, manage or rent it to the best advantage and hold the proceeds as a part of the estate of James W. Casebier, out of which Mrs. Kimmel, who has had charge of her father for some months, should be paid reasonable compensation. The committee should take charge of any personal property belonging to the Casebiers and which they do not need for their own personal use and preserve it or sell it and preserve the proceeds for there is a possibility that the heirs of Casebier, if the estate is properly managed, may yet receive something from the estate of their father.

Judgment reversed for proceedings consistent with this opinion.