## WAIALUA AGRICULTURAL CO. *v.* CHRISTIAN ET AL.*

No. 15. Argued October 13, 14, 1938.—Decided November 7, 1938.

---

[10] *Margolin* v. *United States, supra; Calhoun* v. *Massie,* 253 U. S. 170.

[11] *Claflin* v. *Houseman,* 93 U. S. 130, 136.

*Together with No. 17, *Christian* v. *Waialua Agricultural Co.,* also on writ of certiorari to the Circuit Court of Appeals for the Ninth Circuit.

92

*Mr. M. C. Sloss,* with whom *Messrs. Charles M. Hite* and *E. D. Turner, Jr.* for Christian et al.

*Mr. Herman Phleger,* with whom *Mr. Maurice E. Harrison* was on the brief, for the Waialua Agricultural Co.

MR. JUSTICE REED delivered the opinion of the Court.

These cases concern the validity of a lease, a contract for maintenance, and a deed conveying or assigning rights of Eliza R. P. Christian, an incompetent, to a one-third undivided interest in land on the Island of Oahu, Territory of Hawaii.

The Supreme Court of the Territory of Hawaii in two opinions on separate appeals set aside the deed and refused to set aside the contract or lease. A decree was entered directing the reconveyance to the incompetent of her previously conveyed interest in the tract with adjustments for improvements.[1] The Circuit Court of Appeals for the Ninth Circuit refused to review the first decree on the ground that no final order had been entered.[2] Appeals were taken from the second decree by the incompetent and, after severance, by the Waialua Agricultural Company, Limited. The Circuit Court of Appeals reversed the Supreme Court of Hawaii and remanded the cause to that court with directions to remand to the trial court, with instructions to grant relief against the deed upon restitution of the consideration and to take further proceedings in respect to the issues concerning the validity of the lease and contract.[3] The petition for rehearing was denied. 94 F. 2d 806. Certiorari and cross-certiorari were sought by the respective parties and granted by this Court to review the ques-

---

[1] *Christian* v. *Waialua Agricultural Co.,* 31 Haw. 817; 33 Haw. 34.

[2] *Waialua Agricultural Co.* v. *Christian,* 52 F. 2d 847.

[3] *Christian* v. *Waialua Agricultural Co.,* 93 F. 2d 603.

tions presented because of the action of the Circuit Court of Appeals in reversing conclusions of the Supreme Court of Hawaii as to applicable principles of law.[4]

The incompetent, Mrs. Christian, was born at Makaha in the Hawaiian Islands on December 30, 1885. She was brought to Honolulu by her father in the early 1890's. By 1901 they had gone to live with Mrs. Annie Holt Kentwell, a cousin and one of the nine children of Owen J. Holt. Except for short periods when the incompetent was in boarding school, they lived with her continuously thereafter. The incompetent's grandfather, R. W. Holt, had died in 1862, leaving a will which devised an equal undivided portion of the real estate involved in these cases to each of his three sons for life and then to the heirs of each in fee simple. One of these sons was John Dominis Holt, the father of the incompetent. The father was living at the time of the execution of the documents here questioned, dying in 1922.

That portion of the grandfather's estate involved in these cases consisted of approximately fourteen thousand acres of land. At the time of the first transactions here considered, one of the sons, Owen J. Holt, had died leaving nine children, each entitled to a one-twenty-seventh interest in fee simple in the tracts. A second son, James R. Holt, was living but had conveyed his life estate to his son, James Lawrence Holt. This son had also purchased the contingent remainder of his brother, Robert Holt, and the life estate of the incompetent's father, John Dominis Holt. Subject to whatever risk there was that his father, James R. Holt, born in 1838, would have other children after 1905, James Lawrence Holt was, in the year last mentioned, the owner of a one-third interest in the property, plus the life estate of his uncle, John Dominis Holt, in another third. James Lawrence Holt had transferred

[4] *Matos* v. *Alonso Hermanos,* 300 U. S. 429.

all these interests to John F. Colburn as Trustee. The property in 1905 was "wholly uncultivated and covered with noxious weeds, including such well-known pests as lantana and *klu*. The taxes at that time were four years in arrears."

On March 17, 1905, the administrator *de bonis non* with-the-will-annexed of R. W. Holt, several of the heirs of his son, Owen J. Holt, and the Hawaiian Realty and Maturity Company, Limited, executed a lease to the Waialua Agricultural Company, Limited, for twenty-five years at an annual rental of $9,000. The administrator was treated in this lease as having title to two-thirds of the whole. The owners of the contingent remainders, one of whom was the incompetent, joined with the lessors in covenanting that the lessee while paying said rent "shall peaceably and quietly hold and enjoy the use and possession of said demised premises . . ."

On the 31st day of August, 1906, the incompetent entered into a contract for maintenance with her cousin, Annie Holt Kentwell. This instrument evidenced an assignment of her title and interest in and to any and all rents, issues and profits due or payable under the above lease or "by virtue of being the only child of John Dominis Holt, the elder, and devisee under the will of R. W. Holt, deceased, together with all and every her right to demand, receive, collect and receipt for all such rents, issues, and profits from whomsoever due during the term of" her natural life. The consideration for the contract was the assumption by Mrs. Kentwell of the support and maintenance of the incompetent. The instrument appears in a footnote.[5]

---

[5] "THIS INDENTURE—made this 31st day of August A. D. 1906, by and between—ELIZA R. P. CHRISTIAN—(the only child and heir of John Dominis Holt, the elder) of Honolulu, Island and County of

A deed was executed on May 2, 1910, in which the incompetent and her husband, Albert Christian, her father, John D. Holt, and Annie Holt Kentwell, and her husband, were parties grantor and James Lawrence Holt was grantee. This deed in consideration of $35,000 con-

---

Oahu, Territory of Hawaii, of the first part, and—ANNIE HOLT KENTWELL—of the same place, party of the second part.

"WITNESSETH—Whereas the party of the first part has for many years last past been supported and maintained at the home of the party of the second part, and at the cost and expense of the said party of the second part, and

"WHEREAS—the said first party is the only child and heir of John Dominis Holt, the elder, being also a devisee under the Will of R. W. Holt, deceased, and is entitled in expectancy to a certain undivided interest or moiety in certain lands situate at Waialua, Oahu, now leased to the Waialua Agricultural Company, Limited, by lease dated the 17th day of March, 1905, and recorded in the Hawaiian Registry of Deeds in Liber    , Folio, and

"WHEREAS—by virtue of being such heir of John Dominis Holt, the elder, and such devisee under the will of R. W. Holt, deceased, aforesaid, she, the said party of the first part, shall upon the death of him, the said John Dominis Holt, the elder, be entitled to her share of the rents reserved in said lease aforesaid, which share of said rents aforesaid is now enjoyed by her father, the said John Dominis Holt, the elder, and

"WHEREAS—the party of the second part has agreed to support and to maintain the party of the first part for and during the period of the natural life of her, the said party of the first part,

"Now THEREFORE THIS INDENTURE WITNESSETH—That the said—ELIZA R. P. CHRISTIAN—in consideration of the premises and of One Dollar to her in hand paid by—ANNIE HOLT KENTWELL—of Honolulu aforesaid, the receipt whereof is hereby duly confessed and acknowledged and for other and valuable consideration to the said—ELIZA R. P. CHRISTIAN—moving from said—ANNIE HOLT KENTWELL—, she, the said—ELIZA R. P. CHRISTIAN—, does hereby give, sell, assign, release, transfer and set over unto the said—ANNIE HOLT KENTWELL—, her heirs, executors and administrators, all her title and interest in and to any and all rents, issues and profits to which she may hereafter be entitled or which may be due and payable to her by, through or under the lease to the

veyed "one undivided third part of interest" subject to the grantee's interest and to the lease of 1905. The deed evidenced the intention "to convey all the interest of the said Grantors, whether present, prospective or in remainder, vested or contingent, of every name and description in and to said lands or which they or either of them may hereafter acquire in and to the said lands." The deed further declared that the grantors assigned and set over to the grantee "all claims and demands which they may have arising out of either said instruments [i. e., the ones dealing with James Lawrence Holt's interests and the lease] or in any other way against the said James Lawrence Holt, the said Waialua Agricultural Company, Limited, or the said John F. Colburn, said Trustee," with exceptions not material here. The grantors further agreed to warrant the property conveyed against the claims and demands of all persons.

---

Waialua Agricultural Company, Limited, dated the 17th day of March, 1905, and recorded in said Liber        Folio        or by virtue of being the only child of John Dominis Holt, the elder, and devisee under the will of R. W. Holt, deceased, together with all and every her right to demand, receive, collect and receipt for all such rents, issues and profits from whomsoever due during the term of the natural life of her, the said—ELIZA R. P. CHRISTIAN—.

"AND—it is expressly agreed and understood between and by the parties hereto that the party of the second part shall support and maintain her, the party of the first part, for and during the natural life of said first part.

"AND—it is further agreed and understood by and between the parties hereto that in case the party of the first part shall survive the party of the second part, the heirs of said second party shall be entitled to perform the covenant of this agreement on the part of said second party to be kept and performed, and they shall during the life of said first party be entitled to the benefit or benefits thereof.

"IN WITNESS WHEREOF—the said—ELIZA R. P. CHRISTIAN—and—ANNIE HOLT KENTWELL—have hereunto set their hands and seals the day and year first above written.

ELIZA R. P. CHRISTIAN
ANNIE HOLT KENTWELL"

The grantee, James Lawrence Holt, and his trustee, John F. Colburn, conveyed the interest and rights acquired by this deed together with the other one-third undivided interest then belonging to James Lawrence Holt to other grantees. By successive conveyances the incompetent's property, covered by the deed of 1910, came into the ownership of the Waialua Agricultural Company, Limited, a defendant in the trial court.

Beginning at about the time when the tract came into the possession of Waialua under the lease, Waialua acquired, through various conveyances, fee simple interests of seven of the nine children of Owen J. Holt. When this action began in 1928, Waialua held in fee simple by color of title twenty-five twenty-sevenths of the property. Under the lease of 1905 it began to improve the property. The lease provided that the improvements would revert to the lessors. After the conveyances in 1910 of the life and remainder interests, covering two-thirds of the fee, Waialua made further important installations. Besides the fourteen thousand acres of the Holt lands, the Waialua plantation includes an additional thirty-six thousand acres. The properties are developed and operated as a unit,—9,904 acres in sugar cane, 11,625 acres in pineapple, the balance uncultivated or used for servicing the crop lands. The record shows a total expenditure of $630,722.12 for improvements on the Holt lands between April 1, 1905, and April 5, 1928, when Waialua was notified the deed was questioned. In addition, reservoirs, ditches and other improvements, off the Holt lands but necessary for their use, have cost Waialua $514,594.94. No description is necessary other than to say that the improvements consist of reservoirs and ditches, roads, pumps, communication systems, camps, overseers' houses, and the other usual fixtures and appurtenances necessary for the operation of a large irrigated plantation.

After the lease had been in operation for a few years, it was found that some 6,500 acres of the Holt lands were suitable for the growing of pineapples. After trying multiple subtenancy, an agreement was made in 1922 with the Hawaiian Pineapple Company giving it an option to lease all the Waialua pineapple lands at $15 per acre. Under the option Waialua invested over three million dollars in the Pineapple Company stock and the Pineapple Company leased 6,475 acres of the Holt lands for seventeen and one-half years from January 1, 1923, to June 30, 1940, with optional extension, at a paid-up rental, reached by a 5% discount, of about two million dollars.

The mechanized scientific farming of the sugar cane and pineapple lands was profitable. The trial court found that $14 per acre was a reasonable ground rent for the Holt land used for sugar production and that $15 per acre was a reasonable ground rent for the pineapple lands after the lease to the Hawaiian Pineapple Company of January 1, 1923. A less sum per acre was found as a reasonable ground rent for the pineapple lands prior to that time.

In 1926 the ward was for the first time declared incompetent, and Annie Holt Kentwell was appointed her guardian in England. In 1927 Mrs. Kentwell's brother, George H. Holt, became guardian of the estate of the ward in Honolulu. The present guardian, Herman V. VonHolt, succeeded him *pendente lite*. On May 9, 1928, a petition was filed against Waialua and James Lawrence Holt in the Circuit Court of the Territory by the guardian alleging the incompetency of the ward on the date of the execution of the deed; and that the purported consideration was inadequate and was never received by the ward. No complaint was made of the execution of the lease or the contract for maintenance. It was alleged that Waialua induced James Lawrence Holt, the grantee

in the deed, to secure the conveyance of the property through Holt's connection with Annie Holt Kentwell, the dominating influence over the incompetent. The guardian prayed for the cancellation of the deed and an accounting for the rental value of the undivided one-third interest from April 10, 1922, the date of the death of the ward's father. James Lawrence Holt appeared and admitted the facts relating to his part in the transaction.

The trial court on adequate evidence found that Eliza Christian was incompetent at the time of the execution of the deed of 1910; that her incompetence had not been adjudicated by a proper protective proceeding, was not "clearly self-evident to an entire stranger" but "was known to James L. Holt, to her father, John Dominis Holt, to the Kentwells and to others who were familiar with her dependency upon the Kentwells." The court found the price inadequate and that it was not clearly shown that Waialua Company had actual notice of the incompetency of Eliza. The decree set aside the deed and entered an award for $540,906.07 in rentals, after deducting the purchase price of $30,000 and interest.

On appeal the Supreme Court of Hawaii sustained the determination of the trial court as to the capacity of the incompetent at the date of the execution of the deed, finding that "she was a congenital imbecile." It assumed that the Waialua Company "had no knowledge of Eliza Christian's incompetency." It held that the consideration was adequate; that there was no laches; and that limitation did not bar the proceeding. It affirmed the action of the trial court in setting aside the deed of May 2, 1910, upon a repayment to Waialua by the incompetent of the purchase price, with interest from May 2, 1910, on a balance of equities, a consideration of the advantages to the incompetent and a suggestion that the consideration did not reach the grantor. The decree of the trial court as to the recovery of the rentals was re-

versed on the ground that Waialua had succeeded to Annie Kentwell's rights under the contract of 1906 to receive and keep the incompetent's rentals during the term of the lease. Rentals beyond the termination of the lease were not involved in the first appeal. The case was therefore remanded to the trial court to determine the validity of the lease of 1905 and the contract of 1906.

On the remand the trial court found that Eliza was incompetent at the time of the execution of the contract, that Mrs. Kentwell knew of the incompetency and that Waialua was not an innocent purchaser from Mrs. Kentwell, since it knew of a secret profit, received by James Lawrence Holt and John F. Colburn in connection with the various conveyances by which Mrs. Kentwell's interests passed to Waialua, "while these two, at the same time, knew of the mental condition of Eliza Christian." In considering the lease of March 17, 1905, the court found that Eliza was incompetent when she gave her assent; but that while the "Waialua Company, . . . is not shown to have had any knowledge of this incompetency," a balance of equities required a conclusion against the validity of the lease. The decree again set aside the deed of May 2, 1910; awarded rentals in the total sum of $606,785.75; annulled the lease of March 17, 1905, in so far as it affected the incompetent; annulled the contract for support and maintenance of August 31, 1906, and gave to Waialua the right to continue in the exclusive use and occupation of reservoirs, pumping stations, irrigation ditches and other improvements until partition or other arrangements were agreed upon. Appeal was taken from this decree.

In its second hearing, the Supreme Court of Hawaii maintained its finding as to the incompetency of Eliza at the time of the execution of the deed of May 2, 1910. It assumed that the trial court was correct in finding Eliza incompetent at the time of the execution of the lease of

1905 and the contract for maintenance of 1906, and accepted the finding of the trial court that Waialua was not shown to have any knowledge of Eliza's incompetency at the time it took the lease of 1905. It determined that the deed of May 2, 1910, passed the contract rights assigned to Annie by Eliza and that Waialua succeeded to these rights as an innocent purchaser for value. It further held that the incompetent received an adequate consideration for the lease of 1905. In effect it held that the assignment of 1906 was also for an adequate consideration already largely received. The contract "was beneficial to Eliza." "Eliza had no income or other means of support." "In entering into this contract (1906) neither of the parties knew or could know how long a period of time would elapse before Eliza would become entitled to a share of the rents under the lease . . ." [6]

In the final decree the deed of May 2, 1910, was set aside; the lease of 1905 and the contract of 1906 were sustained; the incompetent was required to pay or secure the payment to Waialua of the purchase price; Waialua was required to convey to the incompetent the one-third interest in fee simple which passed by the deed, with reservations by Waialua of certain portions occupied by its improvements and certain lands and rights of way for ditches, pipes, service, and roads necessary to maintain and distribute water and operate the plantation, and with provisions to insure to the incompetent rights of way for the operation of her properties, if and when the same were partitioned and set off.

We might summarize the factual situation arising from the two trials in the lower court and the two reviews in the Supreme Court of Hawaii as follows: Eliza Christian was found or assumed to have been incompetent at the time of the execution of the lease of 1905, the contract of 1906 and the deed of 1910. Waialua was not found to

---

[6] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 51.

have known of this incompetency at the time it received any rights flowing from any of the instruments. It was determined that the status quo was restored in so far as the deed was concerned by the repayment of the purchase price with interest and that the Holt land could be separated from the rest of the plantation with proper adjustment for improvements.

Upon these facts the Supreme Court of Hawaii determined applicable principles of law. Those considered by the Circuit Court of Appeals were the following:

I. The rule of law in Hawaii is that the deed, lease or contract of an incompetent executed prior to a judicial declaration of incompetency is voidable. A mere showing of incompetency will not avoid it. In determining whether it should be canceled, "all of the equities must be considered, including those in favor of the grantee or lessee as well as those in favor of the grantor or lessor." [7]

"It is our view of the law that a lease made by an incompetent, who has not been judicially declared insane, to a lessee without knowledge of the incompetency, for an adequate rental and upon other terms that are reasonable and fair, which is beneficial to the incompetent and is in effect a provision in favor of the incompetent for necessaries for his sustenance and comfort,—a lease which has been fully performed and is accompanied by no fraud or other circumstances of inequity to the incompetent,— should not be canceled,—even though the lessee can be restored to the *status quo ante*." [8]

In its first opinion the court had said: "When the grantee can be restored to the position it occupied immediately prior to the conveyance, the deed of the incompetent should be canceled even though it was taken in

---

[7] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 40.
[8] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 43.

ignorance of the incompetency and even though the consideration paid was adequate." [9]

It did not refer in the second opinion to any conflict between the statements but found the distinction between the canceled deed and the confirmed lease and contract, in the relative advantages to the incompetent.[10]

II. The construction of the contract for maintenance of 1906 [11] was that it covered rents, issues and profits, payable to the incompetent not only from the lessee under the 1905 lease but also "the rents accruing thereafter from whatever source." [12] This ruling was embodied in the language of the final decree set out in the note below.[13]

"By the deed of May 2, 1910, Annie Kentwell, a mentally competent person, transferred all of her rights under the instrument of 1906 to" Waialua.[14]

III. A court of equity may permit a grantee without notice of the incompetency, who has placed improvements on the land of an incompetent in reliance on a conveyance subsequently canceled, to reserve the improvements together with such land and rights of way over the incom-

[9] *Christian* v. *Waialua Agricultural Co.*, 31 Haw. 817, 888.

[10] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 53.

[11] Footnote 5.

[12] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 52.

[13] "That said instrument dated August 31, 1906, referred to in Paragraph VII hereof, conveyed all rents, issues and profits from the land described in the deed of May 2, 1910 . . . , which have accrued or will accrue to Eliza R. P. Christian, whether under the lease dated March 17, 1905, . . . or otherwise, and from whomsoever due, from August 31, 1906, the date of said instrument, until the end of the natural life of her, the said Eliza R. P. Christian, and that the respondent-appellant, Waialua Agricultural Company, Limited, is the owner of all said rents, issues and profits so conveyed; provided, however, Waialua Agricultural Company, Limited, shall pay all taxes and lawful assessments upon or against said land during the lifetime of the said Eliza R. P. Christian."

[14] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 52.

petent's lands as may be necessary for their proper use under suitable conditions to be prescribed by the court.[15]

While the Circuit Court of Appeals accepted the findings of fact in the trial and appellate courts of Hawaii,[16] it took direct issue with some of the legal conclusions of the Supreme Court of the Territory and held as follows:

I. The general rule of law is that the deed, lease or indenture [17] of an incompetent, executed prior to a judicial declaration to that effect, is void. "Relief against such a contract should not be granted, however, on proof of incompetency only." "So, in the case of a contract made by an incompetent, after proof of the incompetency, relief will be granted against the contract, or refused, depending upon the situation of the parties at the time relief is asked; in other words, the situation of the parties is the controlling factor." [18] "This . . . does not mean that the court should balance all equities of the parties, as was done by the trial court." [19] "The rule as stated means that if the parties can be placed in statu quo, the relief will be granted." [20] This rule was held applicable to Hawaii.

Apparently in reliance on this rule, the lower court determined relief should be granted against the lease as to the lessor, Eliza Christian, or against the contract or against both, if she were incompetent at the time of the execution.[21] The territorial supreme court had denied relief "irrespective of the subject of status quo" and of competency.[22]

---

[15] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34, 57.

[16] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 609, 612; 94 F. 2d 806, 807.

[17] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 611.

[18] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 610.

[19] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 611.

[20] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 612.

[21] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 613.

[22] *Christian* v. *Waialua Agricultural Co.*, 33 Haw. 34; 63.

II. The construction of the contract of maintenance of 1906 is that the incompetent assigned to Mrs. Kentwell her rents, issues and profits under the lease of 1905 only; that later rents, issues and profits were retained.[23]

III. The action of the territorial supreme court, in adjusting equities as to improvements by cross conveyances between the incompetent and the subsequent grantees, is incorrect.

"Here, if the company is entitled to an allowance for improvements at all, it is entitled to an allowance of one-third of the enhanced value of the land, due solely to the addition of improvements since May 2, 1910. That amount may be made a lien against the land, or may be set-off against the rentals, if any, which are found due to the ward." [24]

*Status of the Supreme Court of Hawaii.*—The lower court acquired jurisdiction of the appeals under Judicial Code, § 128.[25] When the Hawaiian Organic Act was passed in 1900, no provision was made for appeals from the territorial supreme court. In 1905, for matters involving more than $5,000, a direct appeal to this Court was provided.[26] In 1911 review of the territorial supreme court was placed upon the same basis as review of the highest court of a State, with a continued right of review, generally, where the amount involved $5,000.[27] Certiorari from this Court was provided by the Act of January 28, 1915, and for the first time review by circuit

[23] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 615.

[24] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 617.

[25] "Fourth. In the Supreme Courts of the Territory of Hawaii and of Porto Rico, in all civil cases, civil or criminal, wherein the Constitution or a statute or treaty of the United States or any authority exercised thereunder is involved; in all other civil cases wherein the value in controversy, exclusive of interest and costs, exceeds $5,000, and in all habeas corpus proceedings." 43 Stat. 936.

[26] 33 Stat. 1035.

[27] 36 Stat. 1158.

courts of appeals for cases involving $5,000 or over.[28]  In each of these successive enactments the Congress has recognized, to some degree, the autonomous position of the Supreme Court of the Territory.

This recognition is natural.  The territorial court has general appellate jurisdiction of cases involving the mores and statutes of an archipelago, the first known compilation of whose laws appeared in 1842.[29]  Isolated until the day of electrical communication and aerial transportation from continuous contact with other peoples, and inhabited by diverse stocks of Oceanica, Asia, Europe and America, it developed, as an independent kingdom, a jurisprudence adapted to its needs.  The constitution of Kamehameha III established a Supreme Court of the Kingdom in 1840 and defined its jurisdiction.[30]  The common law and the civil law were sources of information but not of authority.[31]  Until 1892,[32] lacunae were filled by the judges.[33]  The laws developed were largely

---

[28] 38 Stat. 804.

[29] Preface to the Translation of the Constitution and Laws of the Hawaiian Islands.

[30] "Their business shall be to settle all cases of difficulty which are left unsettled by the tax officers and common judges.  They shall give a new trial according to the conditions of the law.  They shall give previous notice of the time for holding courts, in order that those who are in difficulty may appeal.  The decision of these shall be final.  There shall be no further trial after theirs.  Life, death, confinement, fine, and freedom from it, are all in their hands, and their decisions are final."  Translation of the Constitution and Laws of the Hawaiian Islands, 1842, p. 20.

[31] "The reasonings and analogies of the common law, and of the civil law, may in like manner be cited and adopted by any such court, so far as they are deemed to be founded in justice, and not at conflict with the laws and usages of this kingdom."  Statute Laws of the Hawaiian Islands, 1845–47, Vol. II, p. 5.

[32] Hall v. Kennedy, 27 Haw. 626, 629.

[33] "Section 14.  The Judges have equitable as well as legal jurisdiction, and in all civil matters, where there is no express law, they are

left in force by the Organic Act.[34] These now include a declaratory statute on the source of Hawaiian law.[35] This judicial tradition gives present substance to the rule of this Court that deference will be paid the understanding of territorial courts on matters of local concern.[36]

*Review of its Decisions.*—While the determinations made by the territorial court upon the validity of instruments executed by incompetents, the interpretation of the contract of an incompetent, and the adjustments of equities concerning improvements after cancellation of a

---

bound to proceed and decide according to equity, applying necessary remedies to evils that are not specifically contemplated by law, and conserving the cause of morals and good conscience. To decide equitably, an appeal is to be made to natural law and reason, or to received usage, and resort may also be had to the laws and usages of other countries." Hawaii Civil Code, 1859, p. 7.

[34] "Sec. 1. That the phrase 'the laws of Hawaii,' as used in this Act without qualifying words, shall mean the constitution and laws of the Republic of Hawaii, in force on the twelfth day of August, eighteen hundred and ninety-eight, at the time of the transfer of the sovereignty of the Hawaiian Islands to the United States of America." 31 Stat. 141.

"Sec. 6. That the laws of Hawaii not inconsistent with the Constitution or laws of the United States or the provisions of this Act shall continue in force, subject to repeal or amendment by the legislature of Hawaii or the Congress of the United States." 31 Stat. 142.

[35] "*Common law applies except when.* The common law of England, as ascertained by English and American decisions, is declared to be the common law of the Territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage; *provided,* however, that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the Territory." Revised Laws of Hawaii, 1935, Ch. 1, § 1, p. 73.

Cf. *Kake* v. *Horton,* 2 Haw. 209; *Rex* v. *Tin Ah Chin,* 3 Haw. 90, 95.

[36] *Matos* v. *Alonso Hermanos,* 300 U. S. 429, 430, 432; *Kealoha* v. *Castle,* 210 U. S. 149, 154; *Lewers & Cooke* v. *Atcherly,* 222 U. S. 285, 293; *Ewa Plantation Co.* v. *Wilder,* 289 F. 664, 669.

conveyance, partake of general law, as well as of local law,[37] we see no reason for not applying the rule as to local matters to these circumstances. While the 34th section of the Judiciary Act is not applicable to territories, the arguments of policy in favor of having the state courts declare the law of the state are applicable to the question of whether or not territorial courts should declare the law of the territories with the least possible interference.[38] It is true that under the appeal statute the lower court had complete power to reverse any ruling of the territorial court on law or fact;[39] but we are of the opinion that this power should be exercised only in cases of manifest error. The differentiations, implicit and explicit, in the opinions of the Supreme Court of Hawaii, as to the rules of law applicable to the proceedings to set aside the deed of 1910 and those applicable to similar proceedings as to the lease of 1905 and the contract for maintenance of 1906, do not furnish occasion for reversal by the lower court.[40] In so far as the decisions of the Supreme Court of Hawaii are in conformity with the Constitution and applicable statutes of the United States and are not manifestly erroneous in their statement or application of governing principles, they are to be accepted as stating the law of the Territory. Unless there is clear departure from ordinary legal principles, the preference of a federal court as to the correct rule of general or local law should not be imposed upon Hawaii.

*Decision of the Supreme Court of Hawaii.*—To adopt the legal principles applied by the territorial supreme

---

[37] *Black & White Taxi Co.* v. *Brown & Yellow Taxi Co.*, 276 U. S. 518, 526, 530.

[38] Cf. *Swift* v. *Tyson*, 16 Pet. 1; *Erie R. Co.* v. *Tompkins*, 304 U. S. 64; *Lewers & Cooke* v. *Atcherly*, 222 U. S. 285, 294.

[39] Cf. *Philippine Sugar Co.* v. *Philippine Islands*, 247 U. S. 385, 390.

[40] Cf. *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197, 201; *Fidelity & Columbia Trust Co.* v. *Louisville*, 245 U. S. 54, 59.

court in these cases as rules of decision in that jurisdiction, or to construe instruments as it interpreted them, is not manifest error.

Whatever may be the better rule as to the voidableness of the transfer documents of an incompetent, it is not clearly wrong to select the one here chosen.[41]

The construction of the contract of maintenance by the territorial court of last resort is likewise defensible. The lower court, itself, said the assignment of rents due to the incompetent "by virtue of being . . . devisee under the will . . . during the term of the natural life of her" the incompetent (see note 5, *supra*), might mean "that the ward assigned all rents including those to which she might be entitled under the lease to the company and any other lease." [42]  The minority opinion reached this conclusion.[43]  Although on consideration of the entire contract the majority reached a different answer, the interpretation of the Supreme Court of Hawaii is not manifestly erroneous.  Nor do we see any occasion to reëxamine the interpretation that the deed of May 2; 1910 (the relevant portions of which are set out above, *ante*, p. 96), conveyed the rents, issues and profits, assigned to Mrs. Kentwell.

---

[41] 2 Black, Rescission and Cancellation (2d ed.), §§ 255–258; 1 Williston, Contracts (Rev. ed., 1936–38), § 254; *Imperial Loan Co.* v. *Stone*, (1892) 1 Q. B. 599; *Casebier* v. *Casebier*, 193 Ky. 490; 236 S. W. 966.

[42] *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 614, 615.

[43] "In my opinion the agreement of August 31, 1906, from Eliza Christian to Annie Kentwell, in consideration of her support and maintenance during the balance of her life, purported to convey not only all the rents accruing to Eliza Christian under the lease of 1905 after the contingent remainder of Eliza Christian became vested in 1922 upon the death of her father, as held by the majority opinion, but also all the rents, issues, and profits after the expiration of the lease and until her death." *Christian* v. *Waialua Agricultural Co.*, 93 F. 2d 603, 618.

The lower court considered it necessary to apply here the rule that the occupant of the land of another was entitled to be paid, as compensation for improvements, a sum equal to the amount by which the improvements increased the value of the property, not exceeding the cost. It is not always necessary so to penalize an innocent improver. If he is a tenant in common, partition may be made so as to set apart to him the portion improved.[44] Under the circumstances here disclosed, the action of the Hawaiian court in awarding to Waialua the realty and improvements described in the decree need not be set aside.

Decree of the lower court reversed and decree of the Supreme Court of Hawaii affirmed.

*Reversed.*

---

[44] See *Highland Park Mfg. Co.* v. *Steele,* 232 F. 10, 34, modified 235 F. 465; *Cochran* v. *Shoenberger,* 33 F. 397, 398; *Ford* v. *Knapp,* 102 N. Y. 135, 140; 6 N. E. 283.