## BAILEY v. NEW ENGLAND MUT. LIFE INS. CO. OF BOSTON, MASS.
### No. 862–M.

District Court, S. D. California, Central Division.

Dec. 4, 1940.

D. R. Gustaveson and Spencer C. Olin, both of Los Angeles, Cal., for plaintiff.

J. R. Girling, of Los Angeles, Cal., for defendant.

NETERER, District Judge.

The plaintiff as executor seeks recovery from the defendant for $3,027.40 and interest.

On March 31st, 1939, letters testamentary upon the will of Agnes B. Bonell, deceased, were issued to plaintiff, who thereafter qualified as such, and is now, and has since been, so acting.

The defendant is a foreign corporation, and at all times herein mentioned was so acting, and authorized to do business in the state of California.

That on September 4th, 1936, at Honolulu, Territory of Hawaii, Agnes B. Bonell signed an application for an annuity contract with the defendant, and paid to the defendant $3,640; that an annuity contract was issued by which defendant agreed to pay annuitant $61.25 every three months during her lifetime commencing December 4th, 1936; that thereafter and prior to the death of annuitant defendant made quarterly payments to her and to her guardian in the sum of $612.60, but since her death has refused to pay any sum although demand has been made.

After plaintiff's appointment as executor, and prior to this action, he served written notice of rescission of said annuity contract on the ground, to-wit:

"You are hereby notified as follows:

"1. That the undersigned is the duly qualified, appointed and acting executor of the Will of said Agnes B. Bonell, and is acting pursuant to authority of the Superior Court of California in and for the County of Los Angeles, in proceedings pending in said Court under probate case number 184325.

"2. That the undersigned, acting in such representative capacity, hereby rescinds said purported annuity contract, and that such rescission is made and based upon the following grounds, to-wit:

"First: That no valid contract ever came into existence between you and the said deceased, for the reasons that:

"(a) said deceased was incapable of contracting;

"(b) no valid consent of deceased was obtained;

"(c) there was no meeting of the minds;

"(d) the purported annuity contract which was issued did not correspond or comply with the application signed by said deceased.

"Second: That the consideration of the contract for which said deceased applied, did, through your fault or that of your agents, wholly fail.

"Third: That on the date of the application for, and the issuance and delivery of, said annuity contract, and for several days immediately preceding and succeeding said date, the said Agnes B. Bonell, was infirm in mind and body and was of unsound mind to such an extent that she was unable to, and did not, understand the nature of her act in paying the premium of $3,640.00 or in signing or executing the application upon which said annuity instrument was issued;

"Fourth: That at the time of paying said premium, and of signing and executing said application, and at the time of issuance and delivery of said contract; and at all times thereafter up to her death, said Agnes B. Bonell had no knowledge, information or belief that payments under said contract would cease in the event of her death;

"Fifth: That an unconscionable advantage over said Agnes B. Bonell was obtained and exercised by you, acting through your agents and representatives, in that said agents and representatives were informed and knew, or should have known, that on the date of said application said

Agnes B. Bonell had a reasonable expectation of living not more than one or two years, rather than a normal life expectancy of fourteen, plus, years, upon which latter expectancy said instrument was issued by you.

"The undersigned hereby makes demand upon you for the repayment of the sum of $3,640.00 paid to you by said Agnes B. Bonell by way of premium for said purported contract, together with interest.

"The undersigned hereby offers to restore to you said purported annuity contract, and the sum of $612.60 paid by you thereunder, together with interest, upon condition that payment is made by you of the sum herein demanded.

"Dated at Los Angeles, California, September 30, 1939."

The Court further finds that for more than one year prior to the signing of the application annuitant was under the care of physicians; one physician treated her for two years immediately preceding December 23, 1937, 47 times; that her life expectancy was poor, and he advised her to lead a very quiet life free from worry and care; that there was mental deterioration present due to a long period of high blood pressure and a certain amount of arteriosclerosis of her brain. One doctor treated her for generalized arteriosclerosis and malignant hypertension; he made the last examination of annuitant June 12, 1935. "Her blood pressure was 210/140. She was extremely weak, irritable, apprehensive." She had heavy trace of albumen in her urine. She had cardiac enlargement. In response to inquiry as to her status he said: "In my opinion she was decidedly worse, on the way to some cerebral accident." "Her life expectancy was definitely short."

"Q. Did you advise Agnes Bonell as to your opinion of her then life expectancy? A. Yes."

In "Queens hospital" where annuitant was confined in July, 1936, she told Carel Hawk "that she did not expect to leave the hospital alive and hoped she would not." Edith Isaacs testified that annuitant told her shortly before the date of the application involved herein "that she was going to buy a contract that would take care of the girls." Annuitant had a conference shortly thereafter, with the defendant's agent which resulted in an application for an annuity. The application was then made out as per agreement first made, as shown by the impress (*) by rubber stamp at "form" A2 life "security-single premium refund." At 1X "if form 2" single premium refund is applied for, fill in the following: "15. beneficiaries' names Agnes B. DeForrest and Hannan B. Bonsey, equally or to the survivor, daughters of the annuitant." "17. do reserve to the annuitant the right to change the beneficiary." Answer: "yes." The amount of the annuity was not known to the annuitant. The application was thereafter amended by the company without notice to the annuitant to "no beneficiaries" when the contract was issued. It was authorized to fill in the blank space of application the amount of the quarterly payments. There was also a change made sometime in "AI" by placing "X" in the □, and one line of the "X" was extended into one edge of the star at "A2" perhaps an attempt at changing the answer from single premium refund to a single premium life annuity.

On her death bed in the hospital shortly before death annuitant told her brother, the executor, she had made provision for "the girls." There is no evidence that annuitant knew the difference between single premium refund, and single premium life annuity.

November 28th, 1938, plaintiff was appointed guardian of the annuitant, alleging that by reason of illness she was unable to attend to her business. The annuitant died March 6th, 1939. Annuitant received the quarterly payments provided in the contract, until the appointment of the guardian for annuitant, after which payments were made to the guardian; the last check was issued March 4th, 1939, two days preceding annuitant's death. On October 26th, 1939, notice of rescission, offer to restore, and demand for payment of the money paid, less payments received was made.

From the foregoing facts as found, it must be concluded that the annuitant was ignorant of the scope and effect of the policy-contract. The agreement made at the first conference between annuitant and the defendant's agents clearly shows to be for a "single premium refund." To consummate it the defendant prepared its application for a "single premium refund", but at the next conference, or some other time, this was changed to a "single premium life." The defendant claims it was changed before signing. The only change

in the application is an "X" mark by pen and ink in the square in front of the "single premium life" which appears immediately above the rubber stamp "*" placed in front of "single premium refund", placed there by the defendant after the first conference, and presumable agreement between the annuitant and the defendant. There is no change in the "*" in front of the "single premium refund", except one line of the pen "X" mark, placed before "single premium life" extends into the left edge of the "*" in front of the "single premium refund." The names of the beneficiaries set nearer the place of signature of annuitant appear conspicuous, and readily seen by the annuitant at the time she signed the contract, if the "X" mark was placed there before signing; clearly showing "the girls" are provided for, the contract annuitant desired to make, and the one she said she made on her "death bed" was for "the girls", and that is the contract that she did make. That the minds of the annuitant and the defendant never met on the "single premium life" contract is confessed by the defendant, shown in the record by the telegram to its agent in which it states it changed the application to "no beneficiaries." And it is not reasonably conceivable that a woman, in her condition of health, and repeated expressions of determination to provide for "the girls", and professional advice that she could not live long, would invest $3,640 in such a contract, and change from the one she had first agreed to, making such provision.

The plaintiff is not estopped by the receipt of the quarterly payments by the annuitant, and by the guardian. The annuitant did not know the difference in the quarterly payments in the two contracts; nor did the guardian know. It may be said that they were bound to read the contract, but such reading would not have enlightened them. The mere failure however, to examine the contract by the annuitant or guardian did not create estoppel. National Reserve Ins. Co. v. Scudder, 9 Cir., 71 F.2d 884; Home Ins. Co. v. Sullivan Mach. Co., 10 Cir., 64 F.2d 765. And if it had been read neither had knowledge that the payments were not in accordance with the "single premium refund" contract, which annuitant believed was her contract. The Court in the Estate of Cover, 188 Cal. 133, at page 146, 204 P. 583, at page 589 said: *"It is argued*

on behalf of the appellant, in effect, that even though the doctrine of laches may not be formally pleaded in avoidance of the defense of fraud, nevertheless *the widow, having accepted and retained, without protest or repudiation, the benefits of the agreement during a period of several years after its making, is estopped from defending against its operation.* There might perhaps be much force in this contention if it had been shown in evidence that the widow had discovered, at any time subsequent to the making of the agreement and prior to the death of the deceased, the fraud alleged to have been practiced upon her by the deceased. But the pleadings, the evidence and the supported findings show, in substance, that the widow was *ignorant of the scope and effect of the agreement,* not only at the time of its making, but at all times thereafter until shortly before she petitioned for letters of administration, and that not until then did she have occasion to doubt the bona fides of the deceased. *Accepting the agreement in the belief that the deceased was dealing honestly with her,* she was justified in resting in that belief, and was not called upon then or thereafter to make independent inquiry as to his good faith. Shiels v. Nathan, 12 Cal.App. 604, 108 P. 34. Accepting and retaining the benefit of the agreement, as the evidence shows she did, in continuing ignorance of the effect thereof upon her right to succeed to a portion of the estate of the deceased in the event of his dying intestate, did not operate as an estoppel, for to constitute an *estoppel it must be made to appear that she acted with full knowledge of all the material facts and circumstances and with full knowledge of her rights in the premises."* (All italics supplied.) In Hacker Pipe & Supply Co. v. Chapman Valve Mfg. Co., 17 Cal.App.2d 265, at page 274, 61 P.2d 944, at page 949 said "There can be no waiver where the one against whom it is asserted has acted without full knowledge of the facts. It cannot be presumed, in the absence of such knowledge, that there was an intention to waive an existing right. [Cases cited.] The evidence was amply to justify the belief that plaintiff's sales manager did not have full knowledge of the facts." In the instant case there is total absence of evidence that the plaintiff had knowledge of this "single premium life." "Estoppel does not ordinarily arise from the acceptance of benefits where such ac-

ceptance is induced by excusable neglect or ignorance as to the facts involved." 19 Am.Jur. 691. Nor has Christian v. Waialua Agric. Co., 305 U.S. 91, 59 S.Ct. 21, 83 L.Ed. 60 any application here. This memorandum may be considered the Court's findings.

Judgment for the plaintiff.